Mr. Boland, we'd be glad to hear from you. Yes, ma'am. Good morning. Your Honor, may it please the Court. The defendants in this case submitted a competing bid against their current employer, Adnet, in a head-to-head competition for a tangible, specific subcontract with General Dynamics. In addition, they caused the competition in the first place that was otherwise on track to be sole-source award and was likely to be a sole-source subcontract to Adnet until Adnet's three employees approached General Dynamics and diverted that opportunity. On the duty of loyalty, I'd like to address two primary points and errors in the District Court's decision. First, the District Court erred by misreading Williams v. Dominion to hold that the of loyalty in Virginia, that the duty that employees owe their employer, is limited to just three types of conduct, misuse of confidential information, misappropriation of trade secrets, and solicitation of clients. Those are three examples that the Virginia Supreme Court and Federman has found to be clearly a violation of the duty of loyalty, but they're not the only ones. Federman made clear that it's a case-by-case analysis that a District Court and ultimately has to consider the totality of defendants' actions to determine if they've breached the duty of loyalty. The District Court misread Williams and with that mistake concluded that the only question, that's a quote, the only question raised in Adnet's case was therefore whether Adnet solicited or the defendants solicited one of Adnet's clients. That was an extremely narrow review of the case and it ultimately led the District Court to ignore the obvious facts, which is the defendants here actually competed against Adnet. This was a direct competition head-to-head for a general dynamic subcontractor. They did it while still employed. Were there any contractual restrictions on the ability of these employees to look for work? Your Honor, no, they were not contractually limited. If they wanted to resign, they were free to do that. They could have resigned and competed against Adnet. I'm not, I didn't ask about whether they were free to resign. That wasn't my question. I said, were there any contractual restrictions on their ability to look for work during their employment? No, there was not. They were not contractually limited. They were able to, and in fact, I think Virginia law recognizes they are able to look for work, but they cannot compete directly against their employer while still employed. Well, how are they, I'm not sure how are they competing because Adnet didn't have a general dynamics as a current client. Maybe you would have a different case if general dynamics had been a current client of Adnet, but he wasn't. So what's wrong with competing in that situation where the general dynamics has made no decision to whom is going to award the contract? Your Honor, the duty of loyalty is not limited to situations where employees might be soliciting a current client. That is one example, but it's not the only one. And in this instance, I want to make a very important clarification here. The three defendants here, they were not looking for work. They were not looking for just employment. This is not just an employee changing employers. They used their own company, their own LLC to bid against Adnet. The competition, there was a solicitation issued by general dynamics. Adnet submitted a proposal and unbeknownst to Adnet, his own employees submitted a competing proposal for a company to win the same work. It was a head-to-head competition. It is the definition of competition. And while I also believe that you could sort of characterize this as a form of soliciting an Adnet prospective client, we don't even need to get that far. This is just a head-to-head competition, which is a direct violation of the duty of loyalty. Is that the biggest distinction between this and the Williams case is the fact that there's competitive bidding in this case, whereas in Williams, there's no evidence that they were simultaneously reaching out to a third party and competing for this work opportunity? Your Honor, yes, I would say that is one of the two. Why should that make a difference in our determination of Williams' application? Because Williams was an individual. He was simply changing—Williams is really a case about an employee changing employers. His employer, Dominion, did not know about this potential future work between Steele and ACS. ACS initiated the contact, and ACS solicited Williams to say, when he found out that he wasn't satisfied, to say, come join us. It's an employee finding new work with a new employer. In that instance, there was some harm to Dominion in the sense that probably Dominion lost the work because— What's wrong with a competitive bidding situation? It would seem to me that competition for a contract that I bet decided to compete the contract. What's wrong? It would be socially beneficial to have a competitive bidding situation and allow the general dynamics to get the contract at what was relatively a lower price. All through government contracting and private contracting, we sing the phrases of competitive bidding. Competition is a good thing. Your Honor, I would have two responses to that. One, this was not just individuals changing. This was a company, and it was more than just the three. The contract was for a minimum of four individuals. As part of taking that work that was poised to go to AdNet and over to their own company, they also solicited one of AdNet's employees, Michael Adams. It was not just their own individuals looking for employment. In terms of your broader question about the policy, this case does not implicate the value of competition in government contracting or anywhere else. General Dynamics wanted to compete this subcontract. General Dynamics had no limitation. In fact, General Dynamics could have hired these individuals as employees if they wanted to. They've never expressed that interest. The employees could have left AdNet and become employees of General Dynamics. This case wouldn't be here, but they didn't. The simple fact is under Virginia law, which follows the restatement of agency, there is a fiduciary duty owed to the employer. Let me ask you a question. That issue is keen here. I want to get a clear understanding in terms of your position and maybe the position of the other side. If there is a competing contract bidding by employees of your client, the question becomes, are they putting themselves in direct competition with your client, which in case that may be something a jury could say is a breach of their duty, or whether the jury would find that the participation in this bid was more like a preparation rather than an actual competition. As I see the possibility, I think it's a close question, to be honest with you. I don't know which way it goes right now, but I'm trying to determine because this is a question of whether there is a jury question that can be derived from the fact that unlike in Williams, there's a competitive bidding process here. In that process, they are actually employees of ADMET competing with them. The question then becomes, not contractually, but is that sufficient for a jury, a reasonable jury to find that would be a breach of fiduciary duty of loyalty? Right. I agree. I think absolutely that is a question for the jury to decide. There are a lot of questions in this case. Under Fetterman, it's a totality of the defendant's actions. That's what the jury has to decide. But what brings this on the second time in terms of the jury being able to make a determination whether there was a preparation of an actual competition? What are the acts that makes this something other than a preparation to compete or actual competition? I mean, the key is that it was actually a competitive... I want to back up. They also caused the competition, but just moving beyond that, it went from a sole source to a competitive... They submitted their own bid, didn't they? What's that? They submitted their own bid. The employees did? Yes. Yes. Isn't that the answer to Judge Wynn's question? Yes. I mean, ultimately, you're both competing for the same... You're both affirmatively acting, trying to take the contract. By the defendants submitting their bid, they're essentially saying, give us the work instead of our current employee. I had a question about the elements of the breach of fiduciary loyalty tort here. The district court seemed to indicate that an element of that claim was that there be some sort of a business expectancy. I don't find that in the Virginia cases as an element. What's your view? Your Honor, I would agree. I think that's where... I think the way I trace the district court's analysis, I think that because the district court made that initial misreading of the types of conduct, and the third was the solicitation of employees or prospective clients, I think that's why the district court sort of analyzed the duty of loyalty just in that narrow context, as if Adnet had to show that it was going to get this work from General Dynamics. It was an existing client that was essentially certain. I guess my question is, if the district court added an element to the claim that's not valid under Virginia law, isn't that an error in and of itself? Yes, Your Honor, that would be. If there's no other questions on the duty of loyalty, may I shift just briefly over to the... Let me ask you on that question, just to be clear. Is it the contention that the district court did that for the breach of loyalty, not regarding the tortious interference? Because it appears that is an element under that. Is that... That's right, Your Honor. Yes. There's overlap between the district court's analysis of the duty of loyalty and then the interference. If I may just briefly touch on the interference, we believe the district court erred by essentially holding Adnet to a standard of demonstrating a guaranteed subcontract, or something that was essentially certain. The cause of action just requires that it was more likely than not that it was probable, as opposed to just merely possible. And we think there's ample evidence in the record, certainly enough for a jury to decide, to be presented to a jury to decide, including the fact that the general dynamics corporate representative who was deposed... But be clear, the district court in this case, as I've read it, maybe I'm wrong, but correct me, only relied on that first factor, that you didn't establish this factor that the existence of a business expectancy with General Dynamics existed. Is that right? Your Honor, that's right. So it turns on that. So what do you have to show there were some sort... There was some sort of business expectancy? Your Honor, the business expectancy, there's a number of factors, including the fact that General Dynamics was poised to award this contract to Adnet on a sole source basis. They had already submitted Adnet's pricing to the Army. The Army modified General Dynamics contract to pay those prices, which is a determination that the prices are fair and reasonable. In the General Dynamics corporate representative... But that was just the placeholder. I mean, the submitting of the prices to the Army, wasn't that just the placeholder? I mean, what I'm trying to do is determine what is that subjective evidence that Adnet probably would have received this subcontract. First, Your Honor, the corporate representative testified that this would have but for the appearance of the dependents. When they showed up and said, hey, we're also interested, she said that automatically makes it competitive. That was the key. It was their appearance. And then... But I would actually sort of disagree. I don't think it's a placeholder. In the government contracts, General Dynamics is not going to sign a subcontract with Adnet until the Army covers it first. So they start with the rough order of magnitude, the estimate, they get it added to their prime contract, and then that gives General Dynamics the Army's blessing to award the subcontract. So it wasn't the actual subcontract, but it was more than just a placeholder. It was actually concrete steps showing that General Dynamics was ready to award this to Adnet, they would have, but for their appearance. If there are no more questions... Thank you very much. Let's hear from your opposing number. Good morning, and may it please the court. My name is Plak Patel, and I represent the Pelley's, Rohit Soni, Laura Barr, and Jason Laird. This appeal involves an uncomplicated question of a fine black letter of Virginia law that has been clearly decided by the state Supreme Court. As was properly concluded by the district court, this matter cannot be distinguished from Williams v. Dominion Tech Partners. The Supreme Court has decided that this matter should not be established law in the absence of a contract restriction. An employee has a right to make arrangements during their employment to compete with their employer. There is the distinction of a competitive bidding. The question then arises, is there a jury question that can come from the fact that, unlike in Williams, there was a competitive bidding by employees of the company? Yes, Your Honor, and I do believe that this leads in favor of the appellees, and the reason being is that in Dominion, ACLIS was an existing client, whereas in the matter at Barr, GDIT was not an existing client, and the competition allowed ADNET the chance to put in its own proposal. And so both companies were planning on competing. There was no competition yet, and what ADNET glosses over is that it's its own actions that led to it not receiving the contract. Well, those are all issues that I don't think you can say are uncontested issues of fact, which is why you're here based on a summary judgment motion. Your Honor, the district court said that it was undisputed. I understand that that's what it said, but I think there can be a fair reading of the record to say that the district court was incorrect on that point. So when you look at the district court's opinion, and you compare it to the Virginia Supreme Court's decision in Williams, it leaves me some pause, because Williams was very clear that the three circumstances mentioned by the district court with regard to misuse of confidential information, misappropriation of trade secrets, and solicitation of clients was not an exhaustive list. But the language of the district court's opinion seems to indicate that it read it as an exhaustive list, because it says the only question before the court is whether defendants solicited plaintiff's clients. And that's not what Williams says. Your Honor, I think that what the district court was saying that it's explicitly... I'm reading the language directly out of its opinion. It says the only question before the court. And I believe that was part of its consideration in considering the totality of its circumstances. It doesn't say anything about totality of the circumstances. It says you got three questions. I'm only going to consider one. And I believe the district court ruled that way, because ADNET does not allege that there was a misappropriation of trade secrets or any misuse of confidential information. Right, but that's... I understand what you're saying. But Williams and other Virginia cases make it clear that those three circumstances are not the only ones about which a breach of Virginia Supreme Court of the restatement of agency that deals with these issues. And I do believe even that the restatements cited by the appellant states that employees are allowed to plan to prospectively compete in the future. And so Williams is not distinct from what the restatement is saying. Well, what about this second restatement of agency 393? Employee is not entitled to solicit customers for his rival business before the end of his employment, nor can he properly do other similar acts in direct competition with the employer's business. And I think that hits the issue right on the head. GDIT was not a current client, nor was it even a prospective client at that point. The restatement doesn't restrict it to current clients, and I don't think there's a Virginia case that restricts it to current clients, unless you know of one. No, Your Honor, but even if we limit it to prospective clients, that was not the case here. Specifically, it was only in consideration, but it was never promised the sole source contract from GDIT. GDIT's testimony states... Right, but isn't that the ultimate factual determination to be made on the merits? And I think the district court properly concluded that a jury would not reasonably find that ADNET was assured anything beyond the mere hope of a contract with GDIT. Well, there you're bringing in this guarantee business expectancy, which is not an element of a breach of fiduciary loyalty claim under Virginia law. No. It's an element of tortious interference, but it's not an element of breach of fiduciary loyalty. No, Your Honor, and that's why I believe the breach of fiduciary duty claim is quite straightforward, because the loyalty lies in ADNET or in... Let's see your response. No, Your Honor, what? No, it's not an element of a business fiduciary business expectancy of no in terms of... Explain the no when you said no, Your Honor. I couldn't understand it. Yes, Your Honor. So what I mean is that while it may not be an element, the elements are showing a duty, showing a breach of those duty and result in damages. But what the expectancy was is simply a consideration when the district court was looking at the totality of the circumstances. And so in looking at the circumstances, there was no duty. Even if we accept that as valid for our argument here, wasn't there evidence from the other side that they had some type of an expectancy? No, Your Honor. So their testimony solely relies on the testimony of its CEO. And what GDIT has explicitly said, well, there's two layers to this. First, the Army has explicitly testified that they had no involvement in who GDIT would have chosen as a subcontractor. And then the second layer of it is that GDIT's testimony, which has been undisputed, is that it did not even know of ADNET until it received the contract from the Army. And then afterwards, it was exploring several options, options that included keeping the work themselves or having a competitive process where it would choose a subcontractor. And importantly, ADNET and the appellants were not the only companies being considered. GDIT was also considering previous vendors that it had worked with, including CTY Technologies. But they've also got evidence that this was going to be a sole source contract, that there were indications that that was going to be the award. A jury may not find that to be accurate. But when we're here on summary judgment, we have to take the evidence and the like most favorable to the non-prevailing party. Yes, Your Honor. So I believe that the no jury would conclude based off of the evidence that ADNET presented or relies on that this would have been a sole source contract. My opposing counsel did state that ADNET submitted a... I understand that's your position. Yeah. But if a jury didn't agree with you and instead they found the opposing party's evidence to be more credible, couldn't they return a verdict? If they did find the evidence to be more credible, certainly. But the evidence is not credible and directly contradicted by the Army and GDIT because the evidence indicates the record is clear. Isn't that classically what you would argue to the jury? And let them weigh the evidence? So in a matter of summary judgment, it still is not... The district court properly found that a jury would not reasonably find in that favor. As it was, ADNET did submit an initial pricing and they claimed that this was used in a proposal that GDIT submitted to the Army. But then ADNET subsequently included additional costs that included half of its facility fees. This amounted to another $26,000 a year. So there was no assurance that it would be a sole source contract. Indeed, ADNET was changing its proposal and its pricing. There was no agreement and GDIT has stated that it still had the option of doing the work itself. So here, I think that district court correctly found that on Williams is directly on point. It's undisputed that the Army made the decision, informed ADNET, that the prime contract would not have been renewed after its termination on August... Your position would be different as I understand it. Employees had known that ADVET was bidding on a contract. Your position would be different if the employees here had known that ADVET was actually bidding on a contract. No, Your Honor. At that point, it still was... The appellants were still just... Our employees were still justified in bidding for prospective employment. And that's what it was. You... I understand you think your position was stronger. Even if your position wouldn't change, you think your position was stronger in light of the fact that the employees here did not know that they had no inkling that ADVET was actually bidding on the subcontract. Certainly, the process was conducted by GDIT. Is that correct? Yes, Your Honor. Certainly, the appellants were not aware that ADNET was certainly... But there's testimony from the executive at ADNET, among others, that they did know that the reason that they were able to bid on it was that they found that out in employee meetings. There's no evidence in the record that cites to that besides the self-serving testimony of ADNET CEO. As the appellees have testified... Well, that may be self-serving, but that's what you argued to the jury. Your Honor, the process is clear and the record is undisputed that GDIT held the competition in a manner that isolated the parties and did not allow this information to be shared. Specifically, the parties signed NDAs. And ADNET itself admits that it was keeping the information regarding its bid and the details of its proposal insular. It was not being shared with employees. And so, even if our clients had a mere idea that ADNET was submitting a proposal, the substance of it was not known and it could not have been known by the nature of the competitive process. I understand you are saying that although there may be dispute here, that there was no genuine dispute of material fact on the point that the employees did not know that ADVET was bidding on the subcontract or what the relationship between ADVET and General Dynamics was. Is that correct? Yes, Your Honor, that explains it correctly. That there is no genuine dispute that our jury would reasonably conclude that, especially in light of ADNET's admission that it was withholding the details of this proposal that the appellees could have known anything beyond the details of its own bid. So, your view is that it's not a breach of fiduciary duty for employees who are looking for work after their employment is scheduled to end. They're looking out for themselves. And if they do not know that their employer is involved with General Dynamics or with any contractor, just in order for employees to be able to look out for themselves and to provide some sort of future opportunities for themselves after they leave their work, your view is that should not be a breach of fiduciary duty because you would be really disadvantaging employees from trying to avoid unemployment or being out on the street after they leave their present job. And if there's no genuine dispute that they did not know that ADVET was going to be bidding on the subcontract, what they did was what employees do all the time, which is to make some provision for their future. And I think that hits it exactly on the head. This competition process was essentially ADNET and the appellees submitting resumes. Their proposals were essentially resumes looking for employment. There was no evidence in the record. I'm disappointed. It seems like to me, I think I remember seeing something where the CEO of this company said he told them that there was a bidding. And what if there's evidence in the record? There were text messages with the defendants here that basically acknowledge that they believe that ADVET was in the bidding process. Does that move this from a dispute to a genuine dispute? Your Honor, I think that this is... Would that type of evidence do that? No, Your Honor. And I think because Williams does cover this. Because in Williams, the employee knew that Dominion, the ACSYS was a customer of Dominion. Here's the evidence in which the CEO that he told him, that's his evidence. He said, I told him I was in the bidding process. Then there's text messages between the defendants acknowledging, you know, there's probably in this bidding. You're saying that does not... That a reasonable jury could not discern from that particular evidence to rule in a different way? So the answer is sort of twofold. That one, the timing of the text messages does apply because these text messages were not exchanged during the process of when the parties were submitting their proposals. These text messages were after the fact. And so at this time, the process had played out. But if the evidence, their state of mind, why isn't that relevant for a jury? As the district court properly ruled, the motivation is sort of irrelevant to the elements of a breach of fiduciary duty. But those questions don't go to that. It's whether or not there's record evidence that there is a dispute as to how your clients came to know and make the bid. And so there is evidence in the record that the CEO testified that he told them. That's how they found out about it. And there were the text messages Judge Wynn referenced. But is there something else in the record that discloses how your clients became aware of the ADNAT bid? Or how did they know to submit a bid to GDIT? No, the record is sort of devoid of any sort of evidence pointed out by ADNAT, that which indicates that the appellees only learned of this opportunity through its employment. I mean, at the end of the day, this does involve a government contract, and there's a certain level of transparency required. So did you just say that the record indicates that they learned of it through their employment? No, the record is devoid of any evidence that that is certainly what happened, even though that's what ADNAT's position is. All right, so I don't need to keep going over this, but tell me how that's not a disputed issue of material fact. I mean, if you have no evidence in the record of how your clients became aware of this possibility, and there is evidence, you don't think it's credible, but a jury might disagree that they learned of it solely through their employment. How is that not a material dispute of fact? And I do believe that because this consideration was not an issue in Williams, the court is quite clear in Williams that it didn't matter whether Williams found out through his employment or through other means. It was the issue was the fact that Williams was planning for prospective employment. So the court wasn't really considering how it was found out. So it's sort of immaterial how the police found out about this opportunity. Counselor, let me ask you this. To me, it's important as to whether these employees knew that ADVET would likely be bidding on the client on the general dynamics contract or not. And give me your, you know, the other side is indicating, well, that's a jury question. Now you tell me why you don't think there's a genuine dispute, just in plain terms. Why do you think there's no genuine dispute over the fact that the employees here did not have any idea that ADVET was bidding on the subcontract? Because there's a danger in going far with this and submitting all these questions to juries in the absence of a genuine dispute. We are preventing employees from looking from looking out for themselves when their employment, for whatever reason, ends. So a lot of it, in my view, competition and competitive bidding is a good thing. I think there are limits to the degree in which as the district court, we can invoke tort law to shield companies from the competitive bidding process. And these people did not disclose trade secrets or divulge confidential information. But the question I have, it's important, it's a material fact to me. The question is whether there's a genuine dispute. Now just tell me in plain words, why you think there is no genuine dispute that the employees here had no idea about the fact that ADVET was going to be pursuing and bidding on the General Dynamics contract, okay? Just come to grips with that because obviously you've got some questions about it. Come to grips with it. Yes, Your Honor. And so I think that the answer is sort of twofold. That at first, no one could have been aware that ADVET was bidding for a subcontract because GDIT itself did not know that the subcontract would exist. It was considering several options, including insourcing the work. And subsequent to it choosing to compete the contract, the police could have no idea because the process was sort of shrouded with secrecy in order to the parties, including NDAs and such. And as ADMET itself has testified, it did not disclose the details of its proposals or what it was likely to do to its employees. At this time, the employees were only aware that the Army contract that it was working on was set to expire August 31st. And it had no expectation and no indication that they would need to continue to work on this project after the fact. And that's what the district court sort of ruled, is that the issue of whether, you know, the employees knew or not, was it could not have known because of the nature of the contract with GDIT and also the subsequent actions of ADMET during the bidding process. You say there's a finding to that effect in the district court opinion? Yes, I believe in the district court's findings of facts, it does rule that the employee had no, had not been communicated that they would need to work beyond the August 31st date. What's that have to do with whether or not they were aware of the subcontract with GDIT and the opportunity to bid? And so that leads into the idea that the employees would have no idea because it was never communicated to them the idea that ADMET could continue working on this project, even as a subcontractor of GDIT. All right, thank you very much. If anyone has any further questions, we'll open this up to rebuttal. All right, thank you. You have some time for rebuttal. Thank you, Your Honor. Two quick points. I want to make very clear, the only reason the three employees ended their employment relationship with ADMET was because ADMET lost the subcontract. There's nothing in the record that indicated their work, their employment would end in August. ADMET had every intention to keep their employment going for several more years. That was their goal. Employers don't have an obligation to disclose that to their employees. But I think there's certainly evidence in the record for a jury to decide, and there's a genuine dispute as to whether or not the employees knew, or also just sort of deliberately did not know. There's a whole concept of sort of deliberate, you're sort of burying your head in the sand. So this is where it's coming down to a question of whether they actually knew of it. All the evidence, there's evidence in the record that the CEO testified that he told them. When did he so-called tell them? He told them in the spring of 2020, when the Army first told him about this. And then during, I guess, his deposition, there was a question presented to one of the defendants law. And the question essentially was, why didn't you ask ADMET if he had a contract? And he says, at least what I'm reading here at J250, he says that he was interested in pursuing the contract because the CEO had essentially told him about it. So I'm trying to understand why that doesn't create an issue of fact as to, did they know? It may well be a jury can go one way or the other, but it turns upon the text messages with the defendants, whether it was before pursuing or whatever, it's a state of mind. In so many cases in which we are dealing with issues of fact on it, we don't like to make that decision for the jury. The only question is, did you know? And there's a lot in this evidence, this record, it seems to indicate that. What do you say, using Judge Wilkerson's question, is your best evidence to show there's sufficient evidence in this record that would create a genuine dispute of fact that would allow a reasonable jury to conclude otherwise? Okay, Your Honor, not my only evidence, but the best evidence I would, is sort of outlined on of our opening brief. The day before the defendants submitted the proposal, not after, the day before there were text messages and they specifically mentioned avoiding the CEO so they wouldn't get pulled into General Dynamics work. There was no other General Dynamics work. They were talking about the proposal. They knew exactly what was going on and they thought it was funny. And they took off for work that week because they didn't want to basically be pulled in and work on AdNet's proposal when they have a competing proposal that they're submitting. They were being deceptive. They knew, and certainly at a minimum, that is more than enough for a jury to make that call. I would also, there's another- What would be your response if they did not know? Let's just assume arguendo that they did not know because the question is, how broad are we going with this kind of thing? And to what degree are we shutting off an employee's ability to look for employment after, for whatever reason, one leaves the job? So if they did just assuming arguendo in response to Judge Wynn's question that the employees did not know that AdNet was pursuing the General Dynamics contract, what would be your position then? Your Honor, I would point your attention to the Virginia Supreme Court case in Horn versus Hawley. I think that that case speaks to the idea, and this is a quote, where an employee, not the employer, quote, must make a frank and full disclosure of all material facts in a fiduciary relationship. I think in this context- What is that? I mean, what I'm worried about is is writing too broadly here and signing off on some general proposition that employees have no right during employment to involve, to seek opportunities after employment that may incidentally bring them into some kind of competition with the employer. Because if you're working for an employer, you have certain kinds of skills. And it's quite likely that post-employment is going to require the utilization of those skills. So there may be a lot of incidental competition with an employer just because they're in the same field. Now, you can approach this question broadly and say, oh, no, you have no right during employment if it's likely to involve the same line of business or potential competition or just conceivable competition with the employer. That seems to me to slam the door pretty darn hard on both employees' rights and the desires of the workplace, which is the district court held either way to conceal people from competition. And so I want to know specifically there's a way to have this narrow and say, if you knew of the specific contract with this specific party, if you came upon that knowledge indisputably, that's one thing. But if you did not know about it and you just happened to stumble into a competitive relationship, that's another thing. So what I'm asking you is, again, if they had had no idea that was pursuing or bidding or whatever the relationship with general dynamics, would your position still be the same? And wouldn't that be awfully broad? You don't need to go that far, do you? You don't need to go that far. Excuse me, counsel. All you need to say is that there's a genuine dispute here that they knew about this contract from the CEO and everything, and they competed about something that they absolutely knew, the employer, a line of business with a particular party that the employer was pursuing. We don't need to go into these broader general propositions about when employees can generally look for post-employment opportunities. I see there's a narrow road that you have and there's a broad road that you have. Your Honor, I would agree. I would say that in this instance, the answer is this was a very specific Army medical research development database. It was a very specific work. We are not saying that the defendants could not go seek work doing generic web development with thousands of job opportunities around the country. This was a very, very specific work and it was a significant agency. But that's important, isn't it? It's important, isn't it, to ground the disposition in the specific facts of this contract, this party, and the knowledge of these employees of the specifics, right? That's the jury question. Okay. Yes. You're not asking us to bite off any big chunks. No, Your Honor. I think that's right. All right. We thank you very much. If there are any further questions from my colleagues, I'd be happy to let you answer them. No questions. No questions, Your Honor. Okay. Thank you very much.
judges: J. Harvie Wilkinson III, G. Steven Agee, James Andrew Wynn